MORTIMER LESLIE GRANT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Grant v. Commissioner
Docket No. 9327-87
United States Tax Court
T.C. Memo 1991-406; 1991 Tax Ct. Memo LEXIS 439; 62 T.C.M. (CCH) 550; T.C.M. (RIA) 91406; August 19, 1991, Filed *439 Decision will be entered under Rule 155. Lester A. West, for the petitioner. Elizabeth Rawlins and Barbara M. Leonard, for the respondent. FAY, Judge. FAY
MEMORANDUM OPINION Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
Sec. 6654(a)
1972
$ 18,907.46
$  9,453.73
$   605.03
1973
33,305.29
16,652.65
1,065.77
1974
24,002.31
12,001.16
768.08
After concessions, the issues remaining for decision are: 1) Whether the Tax Court has jurisdiction over taxable years 1972, 1973, and 1974; 2) whether petitioner had additional unreported income from his civil engineering business, rental properties, and investments during taxable years 1972, 1973, and 1974; 3) whether petitioner *440 is entitled to a bad debt deduction in taxable year 1974; 4) whether petitioner is liable for the additions to tax for fraud pursuant to section 6653(b); [2] and 5) whether petitioner is liable for additions to tax for failure to pay estimated tax pursuant to section 6654(a). For the sake of convenience and clarity we have combined the findings of fact and discussion by issue. Some of the facts have been stipulated and are so found. The stipulation of facts, second stipulation of facts, and third stipulation of facts and accompanying exhibits are incorporated by reference. Mortimer Leslie Grant (petitioner) resided in Santa Barbara, California, when the petition in this case was filed. Jurisdiction
For taxable years 1972 and 1973 petitioner submitted, with his wife Alice M. Grant, protester-type Forms 1040. Each was devoid of information necessary to compute the amount *441 of petitioner's tax liability. Instead each line of the return calling for financial information contained the phrase "AMENDT. 4 & 5." The forms were also without the jurat clause and incorporated by reference numerous works of literature. [3] For taxable year 1974 petitioner submitted no Form 1040 to the Internal Revenue Service (IRS). On March 28, 1979, petitioner and his wife were indicted on two counts of willful failure to file a return, for taxable years 1972 and 1973. He was also indicted on one count of tax evasion for taxable year 1974. On September 17, 1979, petitioner was convicted of two counts of failure to file returns. On January 8, 1987, respondent mailed a statutory notice of deficiency to petitioner. Petitioner timely filed a petition with this Court. Petitioner asserts the Court is without jurisdiction to redetermine the deficiencies and additions to tax regarding petitioner's taxable *442 years 1972 and 1973 because the period of limitations has expired. Section 6501(a) provides for a 3-year period of limitations measured from the date the return was filed. Section 6501(c)(3) states: "In the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." The issue in the instant case is whether the forms submitted by petitioner constitute returns for the purpose of section 6501. We hold the forms in question were not "returns." In Edwards v. Commissioner, 680 F.2d 1268 (9th Cir. 1982), the Court held on substantially similar facts, "tax forms that do not contain information upon which tax liability may be computed are not returns within the meaning of the Internal Revenue Code." Therefore, the Court concluded the "protest type" returns filed by the taxpayer did not "activate the statute of limitations," Edwards v. Commissioner, supra at 1269-1270. The forms filed by petitioner in 1972 and 1973 do not contain any information from which his tax liability can be computed. We hold these forms are not "returns" and therefore *443 the period of limitations is open. Petitioner's reliance on United States v. Kimball, 896 F.2d 1218 (9th Cir. 1990) is of no help to petitioner's case. The Ninth Circuit, sitting en banc, vacated the decision of the three-judge panel, United States v. Kimball, 925 F.2d 356 (9th Cir. 1991), and held that Forms 1040 containing no financial information whatsoever did not constitute "returns" for purposes of section 7203. Petitioner also asserts we are without jurisdiction because the notice of deficiency was invalid pursuant to Scar v. Commissioner, 814 F.2d 1363 (9th Cir. 1987), revg. 81 T.C. 855 (1983). In Scar, the Ninth Circuit held the "'determination' requirement of section 6212(a) has substantive content," 814 F.2d at 1369 (fn. ref. omitted). In other words, the Commissioner "must consider information that relates to a particular taxpayer before it can be said that the Commissioner has 'determined' a 'deficiency', " 814 F.2d at 1368. Petitioner asserts because the forms he filed with the IRS contained an "X" in the box indicating a filing status of "married filing *444 joint return" he made a valid election of said status. Petitioner's argument continues that because respondent issued a notice of deficiency to him individually, respondent obviously did not consider information relating to petitioner -- i.e., petitioner's alleged election of joint filing status -- before issuing the notice of deficiency. Petitioner concludes the notice of deficiency is invalid for all 3 years at issue. Petitioner's argument is without merit. We have already held the forms filed by petitioner for 1972 and 1973 were not valid returns. It is well-settled law when a taxpayer fails to file a valid return respondent may elect the filing status for the taxpayer. Schroeder v. Commissioner, T.C. Memo 1989-110. Petitioner also claims he and Alice M. Grant were jointly indicted for willful failure to file income tax returns for 1972 and 1973. Petitioner asserts the form of this indictment constitutes an acceptance of joint filing status by the Government and collaterally estops respondent from asserting married filing separate status for petitioner in the notice of deficiency. Petitioner's argument is without merit. The indictment is simply for *445 failure to file income tax returns. While the indictment is of both petitioner and Alice M. Grant, it is clearly not for failure to file a joint return. Additionally, petitioner was convicted, individually, of "failure to file income tax returns." Respondent is free to elect "married filing separate" status for petitioner as he has done. Unreported Income
Many items of income and expenses have been stipulated and are no longer in issue. There remain, however, several unagreed items. Respondent used the bank deposit method to determine petitioner's taxable income. This method has long been recognized as acceptable by this Court. See Estate of Mason v. Commissioner, 64 T.C. 651, 657 (1975), affd. 566 F.2d 2 (6th Cir. 1977). During the initial investigation of petitioner, Special Agent Billings and Revenue Agent Correa separated deposits into nonincome deposits and income deposits. On the eve of trial, Special Agent Billings updated the deposit analysis using newly acquired books and records. This review caused several items originally characterized as income to be recharacterized as non-income items, thus decreasing the deficiency *446 determined in the notice of deficiency. A document entitled Update of Civil Income prepared July 23, 1990, summarizes the updated bank deposit analysis for 1973 and 1974. Page one of this document, dealing with taxable year 1973, contains a column entitled "Income Civil As Corrected." This column lists 10 deposit items for 1973 which were in dispute at the start of the trial. [4] At trial petitioner conceded two of these deposits were taxable income. [5]
The single largest item in dispute is a $ 22,350 deposit the source of which is in question. Petitioner argues the deposit represents proceeds from sale of stock of the Lori Company. Petitioner offers no corroborating documents or testimony in support of his assertion. We are not required to accept unpersuasive *447 testimony of interested parties. Tokarski v. Commissioner, 87 T.C. 74 (1986). Petitioner has the burden of proof and he has not carried it. Rule 142(a). We hold the $ 22,350 deposit is ordinary income. Petitioner's community property share is $ 11,175 and is ordinary income to petitioner. The only other deposit petitioner offers evidence to contest is a deposit of $ 17,562.73 discussed supra note 4. Petitioner asserts this figure represents a payment from his sister-in-law in satisfaction of her outstanding debt. Petitioner further asserts the principal amount of the debt was $ 12,000 and bore interest at 6 percent per annum for a total amount due of $ 13,160.50. Petitioner asserts his sister-in-law overpaid him by $ 4,402.23 and this amount was later returned to her. Petitioner failed to offer any evidence of the loan. That is, he did not produce a promissory note, a repayment schedule, or a collateral agreement. He also did not call his sister-in-law as a witness. "The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that *448 if produced it would be unfavorable." Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). We find the $ 17,562.73 is taxable income, and petitioner's community property share is $ 8,781.36. Petitioner offers no evidence as to the remaining seven items included on the Update of Civil Income; therefore we hold they are also taxable income totaling $ 11,811.01. Petitioner's community property share is $ 5,905.50. The second page of the document itemizes disputed income amounts for taxable year 1974. Petitioner conceded one deposit of $ 747.94 and offers no evidence regarding five of the remaining six. We hold petitioner had $ 704.97 of taxable income for these six items. [6]
The item remaining in dispute is a $ 3,000 deposit petitioner's wife identified as a transfer of after-tax money from the Royal Bank of Canada to petitioner's local bank account. Petitioner failed to produce *449 corroborating evidence such as a bank statement from the Royal Bank of Canada to support this contention. Once again petitioner has not carried his burden. We hold petitioner had taxable income of $ 1,500 representing his community property share of the $ 3,000 deposit. Bad Debt Deduction
Petitioner seeks a business bad debt deduction of $ 140,310.31 for money he allegedly loaned to Collinsville-Twin Creek Corporation (CTC). Petitioner asserts this "debt" [7] became worthless in 1974. Respondent asserts petitioner has failed to establish: any loans were actually made; if such loans were made, petitioner made them in the course of his trade or business; and if they were made in the course of petitioner's trade or business, the debts became worthless in 1974. Respondent concludes petitioner is not entitled to a bad debt deduction. For reasons discussed below, we agree with respondent. *450 Section 166(a) allows "as a deduction any debt which becomes worthless within the taxable year." The general rule of deductibility is restricted, for noncorporate taxpayers, in the case of nonbusiness bad debts. Sec. 166(d). During the years in issue, petitioner was a partner in L.A.M. L.A.M. owned 51 percent of CTC. Petitioner was president of CTC but received no salary. Likewise, petitioner did not receive a salary from L.A.M. Petitioner used personal funds to pay CTC's operating expenses. Petitioner provided these funds to CTC without the benefit of a promissory note (or an oral agreement for repayment) or repayment schedule or interest payments. In order for petitioner to be entitled to the deduction, he must prove the existence of "a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166-1(c), Income Tax Regs. In order to satisfy this requirement, petitioner must introduce some evidence -- such as an instrument creating the obligation, a provision for interest or security or both, books and records, or corroborative witnesses of the debtor-creditor relationship. See Zimmerman v. United States, 318 F.2d 611 (9th Cir. 1963). *451 A contribution to capital is not a bona fide indebtedness. To determine whether a transaction was a loan or contribution to capital, the Court will review the subjective intent of the parties and all objective facts and circumstances relating to the transaction. We hold there was no bona fide debt; therefore, petitioner is not entitled to a business bad debt deduction. The question of whether advances to a closely held corporation by an investor are debt or contributions to capital is common. See, e.g., A.R. Lantz Co. v. United States, 424 F.2d 1330 (9th Cir. 1970); Litton Business Systems, Inc. v. Commissioner, 61 T.C. 367 (1973). An objective test of economic reality -- whether an independent lender would make similar advances to the corporation -- is useful in answering this question. Fin Hay Realty Co. v. United States, 398 F.2d 694, 697 (3d Cir. 1968); Wildes v. Commissioner, T.C. Memo 1980-298. Considering the weak financial condition of CTC (needing all day-to-day expenses paid), the speculative nature of the enterprise (gold prospecting in an abandoned mine with antiquated equipment), *452 and the complete lack of evidence of a bona fide debt, we hold for respondent. Because we hold for respondent on this issue, we do not decide the business debt versus nonbusiness debt issue or the worthlessness issue. Addition to Tax for Fraud
Pursuant to section 6653(b) if any part of an underpayment in tax is due to fraud, there is imposed an addition to tax equal to 50 percent of the underpayment. Fraud is generally defined as an intentional wrongdoing by the taxpayer designed to evade the payment of tax believed to be owing. Professional Services v. Commissioner, 79 T.C. 888, 930 (1982). Whether fraud was committed by a taxpayer is a question of fact to be answered upon consideration of all the facts and circumstances of the case. Estate of Pittard v. Commissioner, 69 T.C. 391 (1977). Respondent has the burden of establishing by clear and convincing evidence: (1) An underpayment exists; and (2) the taxpayer intended to evade tax known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Parks v. Commissioner, 94 T.C. 654 (1990), and the cases cited therein; sec. *453 7454(a); Rule 142(b). Respondent has satisfied the first of these two elements. [8]As to the second element, direct evidence of a taxpayer's fraudulent intent is rarely available; therefore, respondent may draw a reasonable inference from the facts and rely upon circumstantial evidence in order to meet his burden of proof. Spies v. United States, 317 U.S. 492, 499, 87 L. Ed. 418, 63 S. Ct. 364 (1943). The taxpayer's entire course of conduct may be considered to decide if he had the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). One "badge of fraud" is a consistent failure to report substantial amounts of income. Lollis v. Commissioner, 595 F.2d 1189, 1191-1192 (9th Cir. 1979), affg. a Memorandum Opinion of this Court. Petitioner failed to file returns in the 3 years at issue. We have found petitioner had substantial *454 amounts of income in each of these years. Other "badges of fraud" are the failure to cooperate with tax authorities and concealment of assets. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. a Memorandum Opinion of this Court. Petitioner opened bank accounts for his engineering business at the Freeport, Grand Bahamas, branch of the Royal Bank of Canada. The record contains no business reason to open an account there as opposed to at a local domestic bank. Respondent asserts, and we agree, petitioner's purpose was to place income beyond the ordinary investigative reach of the IRS. Petitioner raised lack of cooperation with taxing authorities to new heights. Not only did he refuse to provide books and records during the audit, he sought to interfere with Special Agent Billings' attempts to obtain records from third parties. Petitioner did this by sending a form letter to the clients of his engineering firm urging them to "ignore [the IRS's request] with complete impunity" or enter "confidential" as the answer to each question. Petitioner also urged his clients to refuse to comply with any administrative summonses they might receive. For the *455 foregoing reasons, we find petitioner liable for the addition to tax for fraud. In doing so, we remove the need to consider the additions to tax for negligence and failure to file returns. Estimated Taxes
Section 6654 imposes an addition to tax for underpayment of estimated tax by an individual. Petitioner paid estimated tax in the years prior to those in issue; therefore he was aware of his obligation to do so. Petitioner had income in the years in issue and he made no estimated payment. He also failed to show that any of the narrow exceptions to the applicability of the addition provided for in section 6654(d) apply to him. See Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). Therefore, petitioner is liable for additions to tax for failure to make estimated tax payments. Pursuant to the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. As alternatives to the additions to tax for fraud, additions to tax for negligence and for failure to file returns are also at issue.↩
3. The works varied from the King James version of the Holy Bible to "Sue the Bastards," by Billie Shoecraft.↩
4. A deposit totaling $ 17,562.73 was omitted from the document entitled Update of Civil Income. It was stipulated at trial that this amount should appear in the "income" column as in dispute. ↩
5. The two deposits of $ 110 each representing dividend income.↩
6. Petitioner's community share of $ 1,409.94.↩
7. Use of the term debt is for convenience and is no indication the money transferred by petitioner represents a bona fide indebtedness.↩
8. Petitioner did not file returns for the years in question and respondent has proved an underpayment of tax in each of those years.↩